

Hazlehurst Law, EST. 2018

11350 McCormick Road     Executive Plaza II, Suite 705     Hunt Valley, Maryland 21031     Tel. 410.773.9610

March 13, 2021

The Honorable Catherine C. Blake
United States District Judge
   for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

Re:     United States v. Devin O'Cain
          CCB-18-0278 & CCB-19-0331

Dear Judge Blake:

    I write in regard to Mr. O'Cain's sentencing, which is scheduled for Thursday, March 25, 2021 at 1:30 p.m., to request that Your Honor accept Mr. O'Cain's pleas of guilty and impose an aggregate, variant sentence of 84 months imprisonment which is within the range set forth in the plea agreement between the parties under Federal Rule of Procedure 11(c)(1)(C).

    Mr. O'Cain submits that an 84-month sentence is sufficient but not greater than necessary to fulfill the purposes set forth in 18 U.S.C. § 3553(a) based on all of the facts and circumstances of the case including his extremely difficult childhood and his arduous pretrial detention during which he was infected with COVID-19. Such a sentence would also be proportionate, based on his conduct, with those of his co-defendants and avoid sentencing disparities.

<u>The Facts of the Offense and the Advisory Sentencing Guideline Range</u>

    Mr. O'Cain pleaded guilty on February 13, 2020 to Counts 1 and 12 of the indictment in case number CCB-18-0278 charging him, respectively, with Conspiracy to Distribute 28 Grams or more of Cocaine Base in violation of 21 U.S.C. § 846 and Conspiracy to Possess a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(o). He also pleaded guilty on the same date to Count 1 in case number CCB-19-0331 to Attempting to Obtain Contraband in Prison in violation of 18 U.S.C. § 1791(a)(2).

<u>Case CCB-18-0278</u>

    The substance of the offenses in regard to the drug conspiracy and firearm charge are that Mr. O'Cain and 12 others conspired to distribute and possess with the intent to distribute cocaine base in the 2100 block of Aiken Street in Baltimore City from November 2017 to May 2018. As to the firearm offense, Mr. O'Cain is alleged to have conspired with co-defendant Charles Alston to possess a handgun during an attempted drug sale on April 3, 2018. Unbeknownst to either Mr.

O'Cain or Alston, the customer for that sale was an undercover law enforcement agent, and the transaction was being recorded for video and sound. The recording shows that before the sale occurred, two people unrelated to the attempted sale appeared and began shooting at Mr. O'Cain and Alston. Mr. O'Cain ran from the area while Alston went to his car and retrieved a gun, which he used to return fire. There is no evidence that Mr. O'Cain was personally armed at that time nor at any other time during the course of the conspiracy.

Case CCB-19-0331

The facts underlying this offense are that between April 28, 2019 and May 4, 2019, while in pretrial detention at the Chesapeake Detention Facility (CDF), Mr. O'Cain arranged through telephone calls to people outside the facility for marijuana, synthetic marijuana, suboxone, two lighters and rolling papers to be placed in a package and thrown over an outer wall at CDF. Mr. O'Cain was stopped by correctional officers attempting to retrieve the package with a "hook" made of plastic spoons and mouse traps.

The Advisory Guidelines Calculation

The presentence report characterizes Mr. O'Cain as a Career Offender under § 4B1.2 of the advisory sentencing guidelines and sets his offense level as 34. Career Offender status is not contemplated in the advisory guidelines calculation in the plea agreement. Absent Career Offender status, the plea agreement and the presentence report agree that Mr. O'Cain's ultimate offense level is 28 (before a three-level reduction for acceptance of responsibility), though they take different paths to that number.

The plea agreement calculates the base offense level for Count 1 in CCB-18-0278 to be 24 pursuant to § 2D1.1(c)(8) because the offense involved between 28 and 112 grams of cocaine base. It sets the base offense level for Count 12 at 24 under § 2K2.1(a)(2) because the defendant committed the offense after being convicted of two felonies that were either crimes of violence or controlled substance offenses. It also applies a four-level increase under § 2K2.1(a)(2) because the firearm was used in connection with a first degree assault for a total offense level of 28.

For Count 1 in CCB-19-0331, the plea agreement sets the base offense level as six under §§ 2P1.2(a)(3) and (c)(1) and 2D1.1(c)(17). There is a two-level increase under § 2D1.1(b)(4) because the offense involved distribution of a controlled substance in a detention facility. Another two levels are added under § 3B1.1(c) because the defendant was the organizer of the offense. The ultimate base offense level for this count is set at 10.

The plea agreement applies the advisory guidelines multiple count grouping rules. It groups Counts 1 and 12 of CCB-18-0278 together as one unit for an offense level of 28. Consideration of the offense level from CCB-19-0331(Group 2) yields no increase under § 3D1.4(c). Therefore, the combined offense level for both cases is 28. A three-level reduction

under § 3E1.1 for acceptance of responsibility yields a final adjusted offense level of 25.

      Like the plea agreement, the presentence report also sets the base offense level for Count 1 in CCB-18-0278 as 24 under § 2D1.1(c)(8). It adds two levels because the defendant possessed a firearm under § 2D1.1(b)(1) and another two levels under § 2D1.1(b)(2) because the defendant used violence, made a credible threat to use violence, or directed the use of violence, resulting in an adjusted offense level of 28. The presentence report does not specify a factual basis for the addition under § 2D1.1(b)(2) nor does it include any calculations as to Count 12.

      As to CCB-19-0331, the presentence report mirrors the numbers set forth in the plea agreement. It also finds that the offense level, after applying the multiple count grouping rules, results in a final offense level of 28 before any adjustment for acceptance of responsibility. Unlike the plea agreement, the presentence report finds that Mr. O'Cain is a Career Offender and sets his offense level as 34 and his criminal history category as VI. That results in advisory guideline sentencing range of 188 to 235 months.

      Absent Career Offender status, the presentence report assesses Mr. O'Cain's criminal history category as III based on four prior convictions. Mr. O'Cain was found guilty of Possession with the Intent to Distribute Heroin at the age of 18 in 2009. He originally received a sentence of three years, suspending all but one day. In 2013, he violated his probation and received a sentence of one year. In 2012, at age 20, Mr. O'Cain was convicted of First Degree Assault and was sentenced to five years with three years suspended. The same year, for conduct that apparently occurred four days after the assault, Mr. O'Cain was convicted of Possession of a Firearm After a Felony Conviction. He was sentenced in that case on the same day he was sentenced for the assault and received the same punishment. Finally, in 2015 at age 24, Mr. O'Cain was convicted for an offense listed only as "Dirt Bike" in the presentence report. He received a 90-day sentence with 60 days suspended. He later served 60 days in 2017 on a violation of probation. No underlying facts are provided for any of the convictions enumerated in the presentence report. With a criminal history category III and level 25, Mr. O'Cain's non-Career Offender advisory sentencing guideline range would be 70-87 months.

      <u>Mr. O'Cain's Personal History and Characteristics</u>

      Mr. O'Cain is 28 years old. He did not complete high school, but has obtained his GED. He is unmarried, but has two young children with whom he has a close relationship. Mr. O'Cain's own childhood was extremely difficult. He was nine years old when his mother died of leukemia. His father was incarcerated and was barely present during his formative years. Mr. O'Cain was taken in by his half-sister Trina, who has been a constant in his life. She is 12 years his senior and has provided structure and a maternal influence. She encouraged his musical interests as well as participation in sports and attendance at church. The love Ms. O'Cain has demonstrated for Mr. O'Cain has been reciprocated by him. As is set forth in her letter to the Court, Ms. O'Cain suffered kidney failure in 2011. *See* Exhibit 1, Trina O'Cain letter. Mr.

O'Cain helped to transport her to dialysis and doctor's appointments and generally saw to her health and well being. Ms. O'Cain also speaks to Mr. O'Cain's central and important role in their extended family.

Mr. O'Cain's other family members talk about how vital Mr. O'Cain is to them. His sister and nephew recount how Mr. O'Cain acted in an almost paternal role, accompanying them to school or organizing family activities and celebrations. *See* Exhibits 2 and 3, Letters of Quiontay O'Cain and Quinta O'Cain. Unfortunately, it is clear through a letter submitted through a fellow church member, Nartarshia Lassiter, that Mr. O'Cain's childhood was challenged financially. Ms. Lassiter recalls that Mr. O'Cain and his family were unable to afford a new uniform when Mr. O'Cain served as a youth usher, and Ms. Lassiter's family stepped in to help. *See* Exhibit 4, Letter of Nartarshia Lassiter. It is laudable that Mr. O'Cain, who obviously faced tremendous hardship as a child, has tried to be a positive influence for his family. That trait, and the maturity it reflects gives hope that Mr. O'Cain will not return to criminal conduct.

<u>Mr. O'Cain's Difficult Pretrial Detention at CDF</u>

Mr. O'Cain, like too many others, has faced arduous circumstances at CDF. The relatively unchecked spread of the COVID-19 virus and the inadequate measures taken by the facility to deal with the contagion are well documented and have sparked at least one civil suit on behalf of the detainees. *See* 1:21-cv-00428-TSE *Catchings et al v. Wilson et al.* Unfortunately, Mr. O'Cain contracted the virus while detained at CDF. Though he was officially reported to be asymptomatic, Mr. O'Cain suffered fevers and lost his sense of taste and smell. The terror felt by detainees who were essentially left on their own to await an almost inevitable infection cannot be overstated.

Mr. O'Cain has been detained at CDF since 2018. Conditions may have become acutely bad at the facility during the pandemic, but they have never been good. As the Court is aware, the detention center was originally built as a maximum security prison to house the worst of the worst in the Maryland correctional system. It was converted to serve as a federal pretrial detention facility in 2010, a purpose for which it was never intended and has never served well. Beyond not being suited to deal with its current task, the basic living conditions at CDF are routinely substandard.

Mr. O'Cain kept a diary of issues he confronted while detained at CDF from 2018 onward. That log includes a consistent lack of recreation for detainees, infestations of cockroaches and mice (including a mouse tail in another detainee's food), a lack of air conditioning during the summer that made the walls "sweat" (air conditioning has subsequently been installed), several days with no water and one with no hot water, a scabies outbreak among detainees and frequent power outages.

Obviously, Mr. O'Cain committed criminal conduct while detained at CDF. He has

admitted his guilt in that matter and accepted responsibility for it. The Government has also raised with undersigned counsel that Mr. O'Cain received an administrative infraction for receiving suboxone strips in the mail in September 2020. Unlike the conduct that was alleged in CCB-19-0331, however, there is no evidence that Mr. O'Cain solicited the drugs or had anything to do with the mailing. There are no jail calls or monitored written correspondence in which Mr. O'Cain requested anything, and it appears he was nothing more than a passive and unwitting recipient of the suboxone (which calls into question why he received the administrative infraction). Regardless of what Mr. O'Cain may have done (or not done) at CDF, however, there is no excuse for the facility to be maintained so poorly and the detainees to be treated as badly as they are.

<u>Career Offender Status Overrepresents Mr. O'Cain's Criminal History</u>

Section 4B1.1 of the Sentencing Guidelines terms a defendant a career offender if: (1) he was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG § 4B1.1. If these criteria are satisfied, the defendant's criminal history category is automatically elevated to VI and his offense level is raised to the higher of the offense level normally applicable or that set forth in a table which is geared to the maximum penalty for the offense of conviction.

In *United States v. Adkins*, 937 F.2d 947 (4th Cir. 1991) and *United States v. Pinckney,* 938 F.2d 519 (4th Cir. 1991), the Fourth Circuit recognized the power of courts to sentence below otherwise prescribed guideline ranges where the "computed criminal history 'significantly under-represents' or 'significantly over-represents' the seriousness of the of the defendant's criminal history score or the likelihood that the defendant will commit further crimes." *U.S. v. Pinckney,* 938 F.2d at 521. The court in *Adkins* found section 4A1.3 to be no less applicable to defendants classified as career offenders, noting "there is clearly a potential for wide discrepancy in the gravity of past antisocial conduct," for those in that category. *Id*.

Historically, courts in other circuits held that both criminal history category and offense level could be reduced when departing under 4A1.3 in career offender cases noting that to depart downward only in the criminal history category "ignores the nexus between criminal history and career offender status."*United States v. Shoupe,* 35 F.3rd 835, 838 (3rd Cir.1994). Courts also held that it was reasonable, when a departure was warranted, to apply the offense level and criminal history category that would apply absent career offender status. *United States v. Clark,* 8 F.3rd 839, 846 (D.C. Cir.1993). Unfortunately, the advisory sentencing guidelines now permit only a one-level departure in criminal history category. USSG § 4A1.3(b)(3)(A). But there is no such restraint in imposing a variant sentence, and the logic supporting a reduction is similar.

Courts considering the issue of overrepresentation have evaluated several factors. In

*United States v. Senior,* 935 F.2d 151 (8th Cir. 1991), the Eighth Circuit approved the trial court's consideration of the defendant's "criminal career, including his age when he committed the offenses, the proximity in time of the [prior offenses], and the state's assessment of the seriousness of the [defendant's crimes] as reflected by the state court's handling of sentencing and by the length of time Senior actually served." *Id* at 151. Similarly, the Tenth Circuit in *United States v. Bowser,* 941 F.2d 1019 (10th Cir. 1991), approved the trial court's evaluation of the defendant's age when he committed prior offenses, the proximity with which the offenses were committed and the relative sentences imposed in determining whether it was proper to depart downward. *Id.* at 1024-1026.

The two convictions that qualify Mr. O'Cain for Career Offender – the 2009 drug conviction and the 2012 assault – are the oldest on his record. One occurred when he was 18, the second when he was 20. Only one conviction alleges violent conduct. Though there has been no defined cessation of criminal activity, Mr. O'Cain's criminal history does not appear to support the huge elevation in his advisory sentencing guideline range from 70 to 87 months to 188 to 235 months that occurs with Career Offender status.

<u>A Sentence of 84 Months is Appropriate Under 18 U.S.C. § 3553(a)</u>

A sentence of 84 months is within the range agreed to by the parties under Rule 11(c)(1)(C) and also within the non-Career Offender advisory guideline range. It also would be sufficient but not greater than necessary to satisfy the criteria of 18 U.S.C. § 3553(a). One of the factors cited by the statute is to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Mr. O'Cain is not familiar with the criminal records of his co-defendants, but the sentences imposed upon them are a matter of record. Nine co-defendants have been sentenced. The highest term imposed is 84 months. Three co-defendants (Santiful, Brown and Chambers) have received this punishment. Though Mr. O'Cain is the lead defendant in the indictment, he is not identified as an organizer or leader of the drug conspiracy.

An 84-month sentence is also appropriate under the other 3553(a) factors. It will account for the nature and circumstances of Mr. O'Cain's offenses but also reflect appropriate mitigation based on his troubled upbringing and the extremely difficult pretrial detention he has endured at CDF. It would be, by far, the longest sentence Mr. O'Cain has ever received, which will serve to deter him from future criminal conduct and keep the public safe while Mr. O'Cain develops skills in the Bureau of Prisons that will help him not to return to criminal conduct. Finally, because it is consistent with the sentences given his co-defendants and within the non-Career Offender advisory guideline range, it will provide just punishment for his offenses.

For all the reasons in this letter and for any reasons set forth at a hearing on this matter, Mr. O'Cain asks that Your Honor accept his guilty pleas in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and impose an aggregate, variant sentence of 84 months in this

case.

Sincerely,

Paul D. Hazlehurst, Esquire

cc: Patricia C. McLane, AUSA
    Brandon K. Moore, AUSA